(C. D. 228)

WILLIAM J. OBERLE, INC. *v.* UNITED STATES

United States Customs Court, First Division

(Decided October 14, 1939)

*Tompkins & Tompkins (J. Stuart Tompkins* of counsel) for the plaintiff.

*Webster J. Oliver*, Assistant Attorney General (*John J. McDermott* and *Joseph E. Weil*, special attorneys), for the defendant.

Before EVANS, BROWN, and McCLELLAND, Judges; BROWN, J., dissenting

McCLELLAND, Presiding Judge: The merchandise the classification of which is the subject of this protest is described on the invoice as "whiting" and was assessed with duty by the collector of customs at the rate of two-tenths of 1 cent per pound under the provision in paragraph 20 of the Tariff Act of 1930 for ground whiting and the Belgian Trade Agreement reported in T. D. 47600. The protest claim is for duty at the rate of 25 per centum ad valorem under the following provision in the same paragraph:

PAR. 20. Chalk or whiting or Paris white: * * * precipitated * * *.

Joseph V. Reardon, president of the importing company, testified that the business thereof is the manufacture of water paints, and that the merchandise in issue is used in such manufacture. Mr. Reardon stated that he had observed the manufacture of merchandise such as that at bar and described the process as follows: Crude chalk is crushed in an ordinary jaw crusher, and the product is fed into tube mills where it is milled in water, after which it is run into settling tanks wherein the

heavier materials, such as flint and silica, settle to the bottom first in a layer, on top of which a layer of milled chalk settles. The water, which forms the topmost layer is drawn off, following which the milled chalk is drawn off and put through a filter process wherein the moisture is pressed out. The resultant product, known as block whiting, is dried out in a drying chamber and remilled in a mill equipped with an "air separation" device to produce the fineness required. Mr. Reardon stated that the imported material was extremely fine, testing about 99.75, 325 mesh.

On behalf of the defendant W. L. Howell, chief chemist in the United States Customs Laboratory at the port of New Orleans, was called to testify. Mr. Howell testified that he had chemically and microscopically examined a sample of the involved merchandise. Chemical analysis, he said, revealed the sample to be pure whiting in fine, dry powder, over 98 percent calcium carbonate. Comparison of the sample under the microscope with samples of precipitated chalk known to conform to United States Pharmacopoeia standards showed that the imported material "was not of comparatively uniform particles in size or shape as was the U. S. P. sample, and that it contained a small amount of extraneous matter, such as specks and siliceous matter, which were not present in the U. S. P. sample."

It is to be noted that plaintiff contends that the merchandise at bar is "precipitated whiting" as distinguished from "precipitated chalk." There does not seem to be any doubt but that the merchandise in issue is whiting; the only question being whether it can properly be termed "precipitated whiting." Plaintiff's claim is based on the fact that the merchandise consists of the layer of ground whiting which settles, or as the witness Reardon put it "precipitates," in the settling tanks, which the same witness stated were known in this country as classifiers or precipitators.

The contention of the Government is that since the merchandise at bar was not precipitated by chemical action it was not precipitated at all.

"Precipitation" is defined in Funk & Wagnalls New Standard Dictionary as follows:

1. The act of casting down; the state of being thrown downward. 2. Headlong or rash haste or hurry; precipitancy; hastening; acceleration. 3. A falling, flowing, or rushing down with violence and rapidity. 4. (Rare.) Perpendicular or nearly perpendicular descent; precipitousness. 5. *Chem.* The process of rendering insoluble and so separating any of the constituents of a solution, as by reagents; also, the precipitate; as, the *precipitation* of mercurous chlorid. 6. *Meteor.* The deposition of moisture from the atmosphere upon the general surface of the earth: restricted, in the United States Weather Bureau, to hail, mist, rain, snow, or sleet.

It is manifest from the foregoing that there is no process commonly known as "precipitation" which consists of the settling of particles of

a solid which have not been dissolved in a solution, as is the case of the whiting at bar. The testimony of defendant's witness Howell indicates that the particles of whiting which settled from the water in the settling tanks were not dissolved in the water but were suspended therein. They therefore did not precipitate out of the solution but settled out, or sank to the bottom, and no authority the court has been able to find considers the words "precipitation" and "settling" to be synonymous.

The protest is therefore overruled and the decision of the collector is affirmed. Judgment will issue accordingly.